HEMAN SMITH, trustee, *vs.* ALEXANDER BURGESS.

Hampden. Sept. 27. — Nov. 28, 1882. LORD, FIELD & COLBURN, JJ., absent.

A. lent money held in trust by him for C., and took therefor a note and a mortgage of land, the note being payable to A. personally, and the mortgage, which was recorded, reciting that the consideration was paid by A., "trustee of C.," and conveying the land to A., "trustee as aforesaid." A. afterwards borrowed money of B. and assigned the note and mortgage to him as security therefor ; and the assignment of the mortgage was recorded. The note was delivered, but not indorsed, to B. ; and the words "trustee of C." were erased by A. before the mortgage was delivered to B. B. did not examine the record, and his attention was not attracted to the words "trustee as aforesaid," and he had no actual knowledge of their existence, or of the fact that both note and mortgage represented trust funds held by A., but he knew that the money lent to A. was for his personal use. . *Held,* that B. was charged with constructive notice of the trust under which A. held the note and mortgage.

A person who accepts an assignment of a mortgage, without reading the mortgage, is conclusively presumed to know its contents, and is bound by them.

BILL IN EQUITY by the trustee for Clara M. Pyne, under the will of John H. Lucas, to compel the defendant to surrender, for the benefit of the trust estate, a note and mortgage given by Richard W. Gardner to James Lewis, and by him assigned to the defendant. Hearing before *W. Allen*, J., who reported, for the consideration of the full court, the following case :

Lewis was the predecessor of the plaintiff as trustee, and, while trustee, lent to Gardner $2000 belonging to the trust estate, and took therefor the note and mortgage in question, dated

April 23, 1874, the note payable in five years from date to the order of James Lewis. By the mortgage, Gardner, " in consideration of $2000 paid by James Lewis, trustee of Clara M. Pyne," conveyed certain real estate in Springfield to " the said Lewis, trustee as aforesaid." The note was described in the condition of the mortgage as "payable to said James Lewis." The mortgage was recorded on June 4, 1874.

On August 4, 1874, Lewis applied to the defendant for a loan of $1000, and offered the note and mortgage as security. The defendant filled out a blank form of assignment attached to the mortgage, which was executed and delivered by Lewis, with the note and mortgage, and his note for $1000, payable to the defendant, to the latter, who thereupon paid to Lewis the $1000. The assignment of the mortgage was recorded on January 3, 1876, and was absolute in its terms, and by it Lewis, " the grantee mentioned in the deed of mortgage dated April 23, 1874, and recorded," etc., sold, assigned and transferred to the defendant " the aforesaid deed of mortgage, and all my right, title and interest in and to the real estate therein conveyed, and the note therein described." The note was not indorsed by Lewis. When Lewis produced the mortgage to the defendant, it was apparently in the same condition as when executed, and had upon it the certificate of the register that it had been recorded; but it did not then contain the words " trustee of Clara M. Pyne," those words having been erased by Lewis, after the mortgage was recorded. The defendant did not examine the record, but relied upon the paper shown him as the original mortgage. He had no notice of the erasure, and his attention was not attracted to the words " trustee as aforesaid," following the name of Lewis, as grantee, in the mortgage. He knew that the money was for the use of Lewis, and paid it in good faith, relying on the security of the note and mortgage, and without notice of the trust, unless such notice is to be inferred from the words " trustee as aforesaid," in the mortgage, or from the record of it.

*E. B. Maynard*, for the plaintiff.

*G. Wells & E. P. Kendrick*, for the defendant.

C. ALLEN, J. It has heretofore been held in this Commonwealth, that, where a mortgage was assigned to A. B., trustee, in consideration of money paid by him, trustee, and where the

mortgage note was also indorsed to him, trustee, a presumption was raised that he took the same in trust, so that his heirs at law could not convey a good title thereto without showing that in point of fact no trust existed. *Sturtevant* v. *Jaques*, 14 Allen, 523. It has also been held that, if a guardian of minor children uses his wards' money to buy land, and takes a deed acknowledging the receipt of the consideration paid by him as guardian, but running to himself, his heirs and assigns, without otherwise referring to his guardianship, this is sufficient to give notice to his creditors that the land is held by him in trust. *Bancroft* v. *Consen*, 13 Allen, 50. A similar doctrine was held, under somewhat different circumstances, in *Hayward* v. *Cain*, 110 Mass. 273. And in *Shaw* v. *Spencer*, 100 Mass. 382, it was held that a certificate of shares in a corporation, in the name of A. B. trustee, if pledged by him to secure his own debt, gives notice of the trust to the pledgee. This case was much considered, and elaborately discussed at the bar and in the opinion of the court; it was reaffirmed in *Fisher* v. *Brown*, 104 Mass. 259; and it has been approved by the Supreme Court of the United States, in *Duncan* v. *Jaudon*, 15 Wall. 165, 175.

The defendant in the present case made a loan of money to James Lewis, knowing that the same was for the personal use of Lewis, and took as security therefor an assignment of the note and mortgage in question. The note ran to Lewis personally, and was by him delivered, though not indorsed, to the defendant. The mortgage ran to Lewis, "trustee as aforesaid," and the words "trustee for Clara M. Pyne," which originally followed the recital of the payment of the consideration, had been erased. This mortgage was assigned by Lewis personally, without mentioning his capacity as trustee; the assignment being drawn by the defendant upon a form attached to the mortgage itself. Although the defendant had the mortgage in his hands, and although it was taken by him as security, his attention was not attracted to the words "trustee as aforesaid," and he had no actual knowledge of their existence, or of the fact that both note and mortgage represented trust funds held by Lewis.

It cannot be doubted that, if the defendant had read the mortgage, and become aware of the fact that it ran to Lewis as "trustee as aforesaid," he would have pursued the inquiry as to

the meaning of those words. Looking to see what was referred to in the few lines which preceded them, he would probably have discovered the erasure. If he did not, he would have been likely, and also bound, to inquire if Lewis held the mortgage as trustee, and trustee for whom. He knew that the mortgage was given as security for the note, and the mortgage itself showed the same fact. The mortgage and note had reference to one transaction; and, if Lewis held one of them as trustee, there was reason to suppose that he so held the other also. If the defendant had been actually aware that the mortgage ran to Lewis as trustee, the omission of the word "trustee" in the note would not excuse him from the duty of inquiry imposed by the existence of that word in the mortgage. It is not a question from how many sources he would get his information of the trust, but whether he got it from any source.

Nor can we think that the omission of the word "trustee" in the note excused the defendant from the duty of examining the mortgage, to see the nature of the title he was taking. The mortgage was a constituent part of his security. It was not only a link in the title which he was taking, but it was itself produced and delivered to him as representing the title. The rule is general, is stated in various text-books, and is recognized in a multitude of cases, that, where a purchaser has notice of a deed, he is bound by all its contents. 2 Sugd. Vend. & P. 775. 4 Kent Com. 179. 1 Story Eq. Jur. § 400. Kerr on Fraud & Mistake (Am. ed.) 240, 241. 2 Pomeroy Eq. §§ 626–628. A similar rule has been applied in this State to persons who enter into and accept written contracts. *Grace* v. *Adams*, 100 Mass. 505. *Monitor Ins. Co.* v. *Buffum*, 115 Mass. 343. The truth appears to be, that the defendant accepted the mortgage without taking pains to read it. If he had read it, he would have discovered all that was necessary for his protection. The law holds him to the legal duty of reading it, and of informing himself of all it contains. He must be conclusively presumed to have performed this duty, and cannot be heard to say that he did not. His legal position is the same as if he had actually read it.

Finally, it is urged that the words "trustee as aforesaid" were written obscurely, and in a manner likely to escape observation; and the original mortgage has been submitted to us. It is not

suggested that the mortgage was drawn with a view to enable a fraud to be practised upon an unwary purchaser, nor do we find anything in its appearance to warrant such a suggestion. The handwriting is not very plain; but the words in question are not especially illegible. We should be slow to declare that a general obscurity in the handwriting of a mortgage would entitle anybody to buy it without taking pains to ascertain what the hieroglyphics might mean; but in the present case we find no such obscurity as to make a reader likely to overlook those words.                                          *Decree for the plaintiff.*