## C. AFONG *vs.* CHUN HOY and J. A. HOPPER.

### APPEAL FROM DOLE, J.

HEARING, JULY 1, 1892.        DECISION, JULY 12, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

C. A. left a power of attorney with C. H. which did not contain authority to lend C. A.'s money. The fact of the appointment of C. H. by C. A. by letter of attorney was advertised in the newspapers and J. A. H. was aware of it. After C. A. left this Kingdom, C. H. gave to J. A. H. a check on a bank for $29,600.79 to pay his (C. H.'s) debt to J. A. H., signing the check C. A., per C. H. attorney.

Held, the knowledge by J. A. H. that it was C. A.'s money that was tendered him and that C. H. was C. A.'s agent by letter of attorney, put J. A. H. upon inquiry to ascertain if C. H. had authority to use his principal's (C. A.'s) money in that way.

J. A. H. held liable to C. A. for the money so paid.

The representation made by C. A. to J. A. H. as to the good character of C. H., over a year before the payment in question, does not estop C. A. from asserting that the loan of C. H. to himself of C. A.'s money was without authority.

The giving by the agent of C. A. of a receipt for a note made by C. H. to C. A. for the money in question is not of itself evidence of a ratification of the loan.

OPINION OF THE COURT, BY JUDD, C.J.

Having heard the arguments in this case and well considered the pleadings and proofs, we have come to the conclusion that the decision of Mr. Justice Dole, filed on the 23d March, 1892, should be sustained.

We observe that the date of the carefully worded receipt by Mr. Damon to Chun Hoy of Mr. Afong's papers is August 24th, 1891, four days after the beginning of the suit in question. This receipt is explained by counsel to be in exchange for one previously given. This former receipt is not before us, but its absence is not important as there is no evidence that the note receipted for, made by Chun Hoy, was taken by Mr. Afong's attorney as a ratification by Mr. Afong of Chun Hoy's loan to himself.

It was urged before us on appeal, that Mr. Hopper's statement that Mr. Afong had represented to him (Hopper) that Chun Hoy was a man of intergrity and that Mr. Hopper might place absolute confidence in what Chun Hoy said or did, ought to be received. We doubt very much if under the statute allowing this appeal it could be received as evidence, since as Mr. Hopper had been on the stand as a witness in the lower Court, this statement was not "newly-discovered evidence." However this may be, the testimony of Mr. Afong as to the character of Chun Hoy was made over a year before the transaction under consideration, and does not work an estoppel against Afong, for he did not make the representation with a view to influencing Mr. Hopper to receive from Chun Hoy his (Afong's) money. He had no knowledge of Chun Hoy's intention to offer his principal's money, and Chun Hoy did not take the money until about a fortnight after Mr. Afong had left here for China, and could not be communicated with. It presents the case of a man with a previous good character doing a dishonest act. Doubtless Mr. Hopper believed Chun Hoy to be still honest, and no imputation can be made of Mr. Hopper's sharing in the dishonesty. He believed that Chun Hoy had Mr. Afong's consent to the loan to himself. But the law puts the person dealing

with the agent of an absent principal upon inquiry where the circumstances point out a path of investigation to be pursued. In this case the knowledge of the existence of the power of attorney should have impelled Mr. Hopper to examine it. If he had he would not have taken the check.

Decree affirmed.

OPINION OF DOLE, J., APPEALED FROM.

The plaintiff left this country for China, October 17th, 1890, having two days previously appointed the defendant, Chun Hoy, as his attorney in fact, by a letter of attorney of which the following is a copy:

"Know all men by these presents, that I, C. Afong, of Honolulu, Oahu, Hawaiian Kingdom, have made, constituted and appointed, and by these presents do hereby make, constitute and appoint Chun Hoy, of same place, my true and lawful attorney, for me, and in my name, place and stead, and for my use and benefit, to ask, demand, collect and receive all sums of money, debts, dues, accounts, legacies, bequests, interest, dividends, annuities, rents, and demands whatsoever that are now or that shall hereafter become due, owing, payable or belonging to me; to have, use and take all lawful ways and means in my name, or otherwise, for the recovery thereof and to bring and institute all suits at law or in equity therefor; to compromise and agree for the same, and grant acquittances or other sufficient discharges therefor; to purchase, take by demise for any term of years, and accept seizin and possession of lands, tenements and hereditaments and accept delivery of all deeds and other assurances in law therefor; to lease, let, demise, bargain, sell, remise, release and convey lands, tenements and hereditaments, and upon such terms and conditions and under such terms and conditions and under such covenants as he shall think fit; to sell and dispose of goods, wares and merchandise and choses in action, and other property in possession or in action; and for me and in my name, and as my act and deed, to sign, execute, deliver and acknowledge such deeds, covenants, indentures, agreements, bills of lading, receipts, releases and satisfaction of

mortgages, judgments and other debts, and all other instruments in writing, of whatever kind and nature, that may be necessary or proper in the premises; and to appear for and defend me in all actions at law or in equity that may be brought against me.

"Giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with power of substitution and revocation; hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue of these presents."

This power of attorney was recorded in the Registry of Deeds November 26th, 1890, and a notice of it was published in the Honolulu newspapers, as follows: "Notice. Notice is hereby given that during my absence from this Kingdom Chun Hoy will act for me under power of attorney. Dated Honolulu, October 16, 1890. (Signed) C. Afong."

November 1st, 1890, the defendant, Chun Hoy, delivered to the defendant, J. A. Hopper, a check on the bank of Bishop & Co., of Honolulu, of which the following is a copy:

No. 1251.                     " Banking House of Bishop & Co.,
                    Honolulu, H. I., Nov. 1st, 1890.

Pay to Mr. J. A. Hopper or order twenty-nine thousand and six hundred and seventy-nine one hundredths dollars ($29,-600.79.)

C. Afong, per Chun Hoy."
Endorsed " J. A. Hopper, per W. L. H."

This check was presented by Hopper to the bank on the same day it was given to him, and twenty-nine thousand and six hundred dollars and seventy-nine cents, the amount of the check, were paid to him from the plaintiff's bank account and applied by Hopper to the settlement of a debt owed to him by the said Chun Hoy. After this transaction the plaintiff revoked the power of attorney to Chun Hoy and appointed S. M. Damon

as his attorney in fact. Chun Hoy was indebted to Hopper in large amounts of money, and had mortgaged his rice plantation interest to the latter to secure the payment of such debt and for future advances, a part of the debt being for the purchase price of the said planting interest.

These statements are made by the bill of complaint and admitted in the answers of both defendants, but Hopper, in his answer, explains that he had no information sufficient to form a belief that the funds from which the check was paid were the plaintiff's, except that the check was drawn in the name of Afong.

The plaintiff further alleges on information and belief that at the time of bringing the action (August 20th, 1891), Chun Hoy had no money of his own with which to pay plaintiff the amount of the said check and interest, and no securities or property except such as had been so mortgaged to Hopper. This Hopper neither admits or denies, but says he has no information sufficient to form a belief thereupon. The plaintiff also alleges that at the time of the payment of the said check the defendant, Hopper, knew that such money was not Chun Hoy's, but belonged to the plaintiff. Hopper's answer to this is that Chun Hoy had informed him in October, 1890, that he had made arrangements to procure money from Afong at a lower rate of interest that was payable under the mortgages, and that he would pay out of such loan the amount of his indebtedness under the mortgages, which arrangement was agreed to and was effected through the said check.

The plaintiff claims that the payment of the said check to Hopper by Chun Hoy was a misapplication of the funds of the plaintiff held in trust by Chun Hoy, such use of the money being unauthorized by Afong, and that Hopper, knowing that it was Afong's money, and that Chun Hoy was acting under a power of attorney, was charged with notice of the extent of Chun Hoy's authority over such money, and is himself also liable to plaintiff for such misapplication of funds.

It is clear to me that the payment of the money to Hopper by Chun Hoy was without authority from Afong. The letter of at-

torney, which is very full in other respects, contains no power of loaning money whatever; any authorization of this character is conspicuously absent from the instrument. The same may be said of any right to use the trust funds for private purposes. Chun Hoy, in his testimony, says that Afong, before leaving, gave him verbal instructions about lending money. He also produces a letter from Afong, written about January 7th, 1891, which says, "You may lend some money out from the deposits in the bank to those who have good standing." Even if by this showing it could be admitted that Chun Hoy was authorized to loan money November 1st, 1890, which would be a very liberal construction of his authority, he must be held strictly to the limitation expressed in the letter, "to those who have good standing." He would be held to this rule if there were no such words of limitation, for one holding trust funds, with a general power to invest, is usually limited to regular investments, as they are called, which are securities having a recognized status as regards safety and reliability. A trustee departing from this rule, especially if he consults his own interests rather than those of his principal, is liable, unless he can show special authority for such action. In the case of Chun Hoy, his defense does not show a mitigating circumstance or a scintilla of excuse for his transaction with Hopper. A few days after his principal had sailed for China, and while he was owing large amounts, in the neighborhood of $30,000, to the defendant Hopper, and his whole property was mortgaged therefor, he loaned himself $29,600.79 of the plaintiff's money, giving no security therefor, except his note of hand payable in two years with interest at seven per cent. This money is paid to Hopper on account of his debt, and instead of obtaining releases of the incumbrances on his estate by virtue of this payment, for the benefit of the plaintiff, the mortgages are kept intact and the payment of his debt is made the occasion for new advances from Hopper, presumably under the security of the old mortgages referred to. This transaction was not reported by him to Afong for some six months later, and then only in answer to Afong's inquiries, he having heard of it through third parties.

The defendant, Chun Hoy, defends the transaction by saying that his plantation was ample security for the repayment of the amount. The defendant, Hopper, however, says in his answer that "if the payment set forth in the complaint had not been made, this defendant upon no consideration would have advanced such further amounts (new advances), which would have brought the indebtedness of said Chun Hoy to over $50,000, and entirely outside of the limits of said mortgages, and which amount would not be and cannot be properly secured by the securities named in said mortgages." From which we may conclude that what was not good security for further advances by Hopper could hardly have been good for a loan from Afong.

It further appears by the endorsement on the note, of payment on account of the principal while it was still in Chun Hoy's possession and before any of it was due, *i. e.*, in January and February, 1891, that he regarded it as an accommodation loan for his own benefit, rather than a regular investment according to the terms of the note. This view of the matter is fully supported by Chun Hoy's letter to Afong written in May, 1891, in which he uses the following language : " You further state that you don't understand about the money that I drew from Bishop's banking account for the payment of Mr. Hopper's account, and so forth. But this is how it was ; I, your nephew, temporarily borrowed it for the payment of Mr. Hopper's account. You instructed me to keep the said money and remit it when the premium was favorable, but at that time the premium was only 10 per cent., or thereabouts, and I did not know how long to wait. Because there is no interest if the money is kept in the bank, I therefore used my discretion with it ; that is, first for my benefit, second to your benefit. I have carefully given thought about this matter, but you are as rich as a millionaire and I consider this as a small amount to you." Then follows a string of sentimental moralizing, including a request that the plaintiff would overlook the matter. After this frank confession and apology, further comment is hardly necessary. It is interesting that this defendant in his letter values his plantation at

" $20,000 and more," while in his testimony, taken for this case he values it " at between $50,000 and $60,000."

I therefore find that there was a misapplication of funds by Chun Hoy, and that he is liable to Afong therefor, unless Afong ratified the transaction by accepting Chun Hoy's note. This is an unsecured note for $29,600.79, payable in two years from November 1st, 1890, with interest payable annually at seven per cent. It was delivered by Chun Hoy to S. M. Damon, the plaintiff's new attorney, with other documents belonging to the plaintiff, and was receipted for under the following description : " A document purporting to be a promissory note for $29,600.79, dated Nov. 1st, 1890, and to be made by Chun Hoy plantation, or Wing Sing Chong Wai, to the order of C. Afong. Endorsed thereon is the following : 1891, Jan. 24, Recd. Prin. $1,989.67; Feb. 20, Recd. Prin. $5,000 ; May 31, Recd. Int. 85 days, $489.22; May 1, Recd. Int. 26 days, $139.58 ; May 1, Recd. Int. 69 days, $303.37."

I find nothing in the receipt for this note, or in the circumstances connected with its delivery to Mr. Damon, to show that the note passed under any understanding between the parties that it was delivered and received as a valid note, or that it was accepted by the plaintiff's attorney as payment of the said debt from Chun Hoy to Afong or the unpaid balance thereof; on the contrary, we find that Chun Hoy, instead of relying on any such expectation, tried to pacify those representing the plaintiff, who demanded payment then and there, by promising that Hopper would repay the money in semi-annual or annual installments of $5,000 each. The note was delivered with the other papers belonging to Afong held by Chun Hoy, and in receipting for it the precaution was taken to describe it as "a document purporting to be a promissory note," etc., thus giving definite notice to the other side of the refusal of the plaintiff's attorney to receive it as a *bona fide* note for value. There is no evidence that anyone was deceived by this transaction or supposed that the note was received as payment for the money. Moreover, suit was promptly brought for the payment of the debt, further showing that there was no intention on the part

of the plaintiff's representative to accept the note as payment. I find, therefore, that there was no ratification by the plaintiff of Chun Hoy's conduct, and the latter is liable for the balance of the money.

As to the question of the liability of Mr. Hopper, the law applicable to this point is that "those who receive trust property from a trustee, in breach of his trust, become themselves trustees, if they have notice of the trust. *Trull vs. Trull*, 13 Allen, 407; *Blake vs. Trader's Bank*, 145 Mass., 14; *Bodenham vs. Hoskins*, 2 D. M. & G., 905; and "Notice of the existence of an instrument of trust affects the party purchasing trust property with full notice of its contents, whether he chooses to examine it or not." *Loring vs. Brodie*, 134 Mass., 453; *Smith vs. Burgess*, 133 Mass., 511. Bispham, in his Principles of Equity, 334, states this rule of law in these words: "Anything which puts a person upon inquiry is said to amount to notice. He is bound, if circumstances point out a path of investigation, to follow it. If he makes no inquiries, the presumption is that he has improperly turned away from a knowledge of the true state of the case, and he is therefore presumed, as a conclusion of fact, to know what he might have informed himself of."

Under these principles of law, the defendant, Hopper, knowing that Chun Hoy was acting under a letter of attorney from Afong, was bound by it as fully as if he had read it, as he should have done. The payment of this money to him surprised him; it was suspicious; it was out of the common course of business; it was an investment that he would not himself have made under any consideration; this was an additional reason why he should have demanded of Chun Hoy his authority for making so extraordinary a use of the trust funds committed to his care. The assurance of the trustee that he had made arrangements with Afong for this money is no defense to Hopper, especially as he knew that the trustee's authority was in writing. If he had examined the letter of attorney he would have learned, not only that it contained no authority for loaning money, but also that it contained no suggestion of any arrangements whereby Chun Hoy might use the trust funds for his

private interest. A little inquiry would have shown him that Chun Hoy was acting absolutely without authority in an action which was indefensible without special authority.

I find, therefore, that the defendant, Hopper, is liable as a trustee jointly with Chun Hoy to the use of the plaintiff for $29,600.79, subject to the payments endorsed on the said note, which are admitted by the plaintiff, with interest from November 1st, 1890, and the plaintiff may have a decree therefor.

The further prayers that the defendant Hopper be declared a trustee of the said mortgages for the benefit of the plaintiff, and that he be decreed to pay the said balance and interest out of the first proceeds of said rice crops which shall be received by him under the said mortgages, appearing to be somewhat in the nature of alternative relief, are not granted.

*A. S. Hartwell*, for plaintiff.

*F. M. Hatch*, for Chun Hoy.

*W. R. Castle* and *A. P. Peterson*, for J. A. Hopper.