## UNION BAG & PAPER CORPORATION v. BISCHOFF.

(District Court, E. D. New York. December 13, 1918.)

1. PRINCIPAL AND AGENT ⊙⟶123(7)—AUTHORITY OF AGENT—EVIDENCE.

In a suit to compel defendant to purchase property from plaintiff pursuant to an agreement, evidence *held* to establish the authority of defendant's agent, who signed the agreement, and to show defendant's knowledge thereof.

2. SPECIFIC PERFORMANCE ⊙⟶31.—SUIT—RIGHT TO MAINTAIN.

Where defendant's agent signed a letter, written by plaintiff, offering to sell property, and the minds of the parties met, specific performance cannot be denied, because the parties contemplated that a formal contract would be later substituted for the more or less informal agreement.

3. FRAUDS, STATUTE OF ⊙⟶116(5).—AUTHORITY OF AGENT—PURCHASE OF LANDS.

Written authority is not necessary for agent to bind his principal by an agreement to purchase land.

4. PRINCIPAL AND AGENT ⊙⟶21.—AUTHORITY OF AGENT—DECLARATIONS OF AGENT—CREATION.

While agency cannot be proved by the declarations of an agent, the agent may testify to statements made by his principal, in order that the court may determine whether an agency was created.

5. SPECIFIC PERFORMANCE ⊙⟶31—ACTION—DEFENSE.

In a suit to compel defendant to purchase land pursuant to an agreement, it is no defense that the draft contracts did not conform to the agreement contained in an offer by letter, which was accepted by defendant's agent, where the draft contracts were rejected for a different reason.

6. COURTS ⊙⟶365—SPECIFIC PERFORMANCE ⊙⟶32(3)—FOLLOWING STATE DECISIONS—CONTRACT—MUTUALITY.

The federal court will not deny specific performance of a contract whereby defendant was to purchase New York lands, on the ground that the contract lacked mutuality, though the rule in the courts of New York is to the contrary.

7. VENDOR AND PURCHASER ⊙⟶131(2)—INCUMBRANCE—MORTGAGE—PARTIAL RELEASE.

Where a mortgage on all of the vendor's property provided for release of portions for sale, and it appeared the vendor had complied with the requirements which absolutely entitled it to a release, *held*, that specific performance of defendant's contract to purchase part of the vendor's lands will not be denied, because of the mortgage, though defendant could not be required to make payment, unless he receives a title free from the mortgage lien.

---

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Union Bag & Paper Corporation against Frederick Bischoff. Decree for plaintiff on condition.

Thomas Mills Day, of New York City, for plaintiff.
Edward T. Horwill, of Brooklyn, N. Y., for defendant.

GARVIN, District Judge. This is an action brought to compel the defendant to purchase from plaintiff a mill property at Ballston Spa, N. Y. Defendant rested at the close of the plaintiff's case.

On February 21, 1918, the following letter was signed by the plaintiff, and upon it was indorsed by one Briggs:

"Accepted: J. Meade Briggs, Agent for F. Bischoff."

"Union Bag & Paper Corporation.
"Woolworth Building, New York City.

"February 21, 1918.

"Office of the President. Mr. John L. Hurlburt, General Manager,

"F. Bischoff, 150 Sand Street, Brooklyn, N. Y.—Dear Sir: This is to confirm arrangement made with you to-day, through your representative, Mr. J. Meade Briggs, of Brooklyn, whereby we sell to you our property located at Ballston Spa, New York, consisting of real property, mill, machinery, and factory buildings and warehouses, as contained in those properties known as Union Mill property, which you have just gone over (with the exception of our Glen Mill property, which was not shown your representative), and all rights and titles connected therewith, with the exception of any merchandise that may be stored therein, for the sum of fifty thousand dollars ($50,000), on the following terms:

"Five thousand dollars ($5,000) upon the drawing up and signing of the contract, on or before March 1st.

"Fifteen thousand dollars ($15,000) as soon as the deeds for conveying the property are completed, on or before April 1st.

"A mortgage of thirty thousand dollars ($30,000) for two years, interest 6%, of which $10,000 shall be paid one year from this date, and $20,000 to be paid two years from date, and the privilege of paying off any amount in multiples of $5,000 or all on any interest-paying date. Insurance and taxes to be prorated at the date of delivery of deed.

"This sale, of course, is subject to the approval of the trustee under our general mortgage, and the approval of our executive committee, and also is made with the understanding that the property will not be used for a period of ten (10) years for the manufacture of paper bags.

"Very truly yours,          [Signed]  M. B. Wallace,
"MBW:EMH                                         President."

Plaintiff claims that this constitutes a contract binding on the defendant.

[1] It must first be determined whether Briggs had authority to bind defendant. On February 12, 1918, defendant went to Ballston Spa to view the property, accompanied by John L. Hurlburt, who was his general manager, and Briggs. As they were returning, defendant told Briggs that he thought very well of the property, but that the matter was entirely in the hands of Hurlburt, and whatever the latter did was all right. Hurlburt testified that the defendant told him to go ahead and purchase that property. Briggs subsequently called at plaintiff's office, discussed the terms of purchase, and telephoned them to Hurlburt, who was then with defendant in the latter's office. Hurlburt in turn communicated them to the defendant, who said, "All

right." All this, taken together, indicates an intention on the part of defendant to be bound by Briggs' act. The letter in question was addressed to Hurlburt, because the method of taking title had been discussed with defendant, and the latter had indicated that he desired to have the transaction consummated in that manner. Five days after the letter was signed, defendant, after seeing it, returned it to Hurlburt, saying that, although he had changed his mind about some other matters, the purchase of the Ballston Spa property was not affected thereby. The letter provided that the first payment was to be made on or before March 1st, on which day the formal draft of contract was presented to defendant, who then repudiated the entire transaction, not criticizing any act of plaintiff, but claiming he had been tricked (in what manner it does not appear) by Hurlburt.

Defendant claims that the testimony does not make it clear that all the terms of sale were disclosed to him on February 21st. Any doubt upon this is dispelled by the statement made by him February 26th, when he expressed his approval of the purchase after the letter had been submitted to him.

Defendant also urged that the plaintiff's witnesses made confusing and contradictory statements, and that the testimony of at least one—Hurlburt—is wholly improbable. The court had an opportunity to observe the witnesses and their manner of testifying, and has reached a different conclusion. The variations were due almost, if not wholly, to misunderstandings of questions, or to mistakes that are apt to occur in describing the events of several consecutive days. No disposition to conceal or evade was manifested, and in the absence of any proof in behalf of defendant the court accepts plaintiff's witnesses as credible.

[2] It is insisted that no action can lie, because a formal contract was not signed. The true test is to ascertain whether the minds of the parties did in fact meet on February 21st. The proof is convincing that they did, for which reason no formal contract is required. U. S. v. P. J. Carlin Construction Co., 224 Fed. 859, 138 C. C. A. 449; Thomas B. Whitted & Co. v. Fairfield Cotton Mills, 210 Fed. 725, 128 C. C. A. 219; N. Y. & Philadelphia Coal Co. v. Meyersdale Coal Co., 217 Fed. 747, 133 C. C. A. 441.

[3] Defendant urges that Briggs had no written authority from the defendant, and so could not bind him in this way as agent. This was not a transfer of land; it was a contract of sale. As such the authorities hold that the memorandum of the contract need not be signed by the vendee, and that an agent may bind his principal by a contract for the sale of land without having written authority. No reason suggests itself for any different requirement in connection with a contract to purchase land.

[4] While it is quite true, as defendant insists, that agency cannot be proved by the declarations of an agent, the latter may testify to statements made by his alleged principal, in order that the court may determine whether any agency was created.

[5] Whether the draft contracts conformed to the terms of the letter is immaterial. They were rejected for quite a different reason.

[6] The contract may lack mutuality, in which case it could not be enforced by plaintiff in the courts of New York state. See Wadick v. Mace, 191 N. Y. 1, 83 N. E. 571. But the federal courts hold otherwise. Great Lakes Trans. Co. v. Scranton Coal Co., 239 Fed. 603, 152 C. C. A. 437; Montgomery Traction Co. v. Montgomery Light & Power Co., 229 Fed. 672, 144 C. C. A. 82. This case must be determined in accordance with the latter authorities. James v. Gray, 131 Fed. 401, 65 C. C. A. 385, 1 L. R. A. (N. S.) 321.

[7] The mortgage referred to in the letter is in evidence. It provides that any part or parts of the mortgaged property may at any time, at the request of the mortgagor, be released by the trustee from the lien of the mortgage, provided it appears to the trustee that the release is desirable in the conduct of the business of the mortgagor (page 25 of mortgage), and provides that further real estate or other property be conveyed or transferred to the trustee to an amount equal in value to the property to be released. It is further provided by the mortgage that the trustee may accept as satisfactory and conclusive evidence, as to the desirability of any such release, or as to the value of any property to be released, the certificate of a majority of the board of directors of the mortgagor, including the president or first vice president. The executive committee of the plaintiff has approved the sale, and plaintiff is ready to turn over to the trustee the entire amount received for the property, without deducting any commission paid for effecting the sale. A certificate, in proper form, signed by a majority of the directors, is in evidence. The defendant, it is quite true, cannot be compelled to carry out the contract, unless plaintiff gives a title free from the lien of the trust mortgage; but it has been held that, if a mortgage can be discharged out of the purchase money, it does not constitute a bar to the action (Megibben's Adm'rs v. Perin [C. C.] 49 Fed. 183), and therefore a decree can be made which of course, will not result in defendant being obliged to make any payments unless he receives a title free from the mortgage lien; that is to say, the payment and cancellation of the mortgage may be provided for by the decree, which will be for the plaintiff, with costs.