### DE WITT v. CABANNE et al.

(Circuit Court of Appeals, Third Circuit. November 12, 1924.)

No. 3166.

1. **Joint-stock companies and business trusts** ⊸17—One contracting with trustee bound to learn extent of his powers.

One contracting with a trustee under a trust instrument with knowledge that he purports to be acting, not for himself alone, but also for his cotrustees, is bound at his peril to learn the extent of his powers.

2. **Joint-stock companies and business trusts** ⊸17—Authority of one of a number of trustees to make a contract may be shown indirectly by showing general authority.

In an action against the trustees of a trust created to produce a motion picture to recover on a contract for legal services made with one of the trustees, plaintiff may show that such trustee was placed by the others in charge of the production, and the question whether his contract with plaintiff was within such general authority is one for the jury.

3. **Depositions** ⊸95—Adverse party may read selected parts of deposition.

A party may read such parts of a deposition taken by the adverse party, but not used, as he desires, without making the witness his own, and being bound by the parts not read, leaving the other party at liberty to read what is omitted.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action at law by Benjamin P. De Witt against William Christy Cabanne, George

W. Goode, and H. S. Priest, trustees of the William Christy Cabanne Motion Picture Trust, Limited. Judgment for defendants, and plaintiff brings error. Reversed, with directions.

Benjamin P. De Witt, of New York City (Roger Hinds and William L. Darling, both of New York City, of counsel), for plaintiff in error.

Lindabury, Depue & Faulks, of Newark, N. J., and Boyle & Priest, of St. Louis, Mo., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This writ of error brings here for review a judgment of nonsuit entered in an action brought by a lawyer on an express oral contract for professional services. The facts, shortly stated, are these:

[1] Cabanne, Goode and Priest, of St. Louis, made a declaration of trust—similar in form to what is commonly known as a Massachusetts Trust—having for its object the raising and spending of money for the production of a motion picture. Something over $100,000 had been subscribed when, by agreement of the three trustees, Cabanne was sent to New York to develop the picture. He rented a studio, accumulated properties, employed actors and costume outfitters, and organized business and artistic staffs at an outlay of about $5,000 a week. In effecting this organization the plaintiff says that Cabanne engaged him as studio attorney to represent the trust in legal matters at a salary of $1,000 a month for a term of four months, that he rendered the services required of him, and that, after paying him $1,000 for the first month, the trust failed to pay him for the remaining three months and thereupon he brought this suit. There was much confusion at the trial, due we surmise, to wholly opposite theories on which counsel and the court tried the case. It is not disputed that Cabanne, in his capacity of trustee, entered into the agreement which the plaintiff declared upon. The important question is whether the agreement so entered into is, in fact, binding upon the three trustees. Knowing that the person with whom he was contracting was a trustee under a trust instrument and was purporting to act not for himself alone but also for his co-trustees, the plaintiff was bound at his peril to learn the extent of his powers. Zion Church v. Parker, 114 Iowa, 1, 86 N. W. 60; Smith v. Burgess, 133 Mass. 511. Among the provisions of the trust was one that "a majority of said

trustees shall rule." There was no direct evidence of majority action in respect to the contract here involved. This provision therefore controls the agreement and defeats recovery thereon unless the plaintiff can prove that Cabanne was authorized by his co-trustees to make the agreement, or, failing this can prove that subsequently the co-trustees ratified it. Therefore the primary questions of fact concern authorization and ratification, the usual questions in such cases. Both plaintiff's counsel and the court clearly recognized this, but the trouble arose in the conflict of views as to how authorization or ratification should be proved. Counsel for the plaintiff proceeded upon the theory that liability of the two absent trustees for what the present trustee did could be established by showing facts from which the authority of the acting trustee to make the contract could be implied and by proving statements of employees by which, he thought, their principals would be bound. The court insisted that the trial proceed on the rigid theory of affirmative proof of antecedent authority expressly given by the absent trustees or affirmative proof of express ratification subsequently made. We discern error in both theories.

We shall not treat separately the many assignments of error covering seventy pages of the record for the reason that, if the case should be tried again, the matters complained of will, probably, not call for decision. We shall do no more than give in abstract the law which we think governs the case as it now stands on the record.

[2] In showing that the absent trustees authorized the acting trustee to enter into the contract in suit, the plaintiff is not restricted to proof of direct, express and particular authorization; he may prove authorization indirectly (though none the less affirmatively) by showing that Cabanne went to New York with the authority of his co-trustees to do the thing contemplated by the trust, namely, the production of a motion picture. He can show the scope of Cabanne's authority in this regard by showing the things he authoritatively did in the performance of the trust and raise the question whether the plaintiff's employment as counsel came within the scope of his authority. This question is not for the court; it is for the jury when there is evidence on which the jury can base a valid finding. We are of opinion that the learned trial court was entirely right in its many rulings against the plaintiff when he endeavored to prove that employment of counsel in such matters was customary, and sought to prove and recover for services on

a quantum meruit not pleaded, and tried to bind the defendants by words and admissions of trust employées. Yet we find enough evidence to raise a debatable question whether employment of counsel was within the scope of Cabanne's authority. Therefore we think the trial court fell into error in not submitting this evidence to the jury. Bailey v. Mississippi Home Telephone Co., 252 F. 581, 164 C. C. A. 497; N. Y. & P. C. & C. Co. v. Meyersdale Coal Co., 217 F. 747, 750, 133 C. C. A. 441; Dierkes v. Hauxhurst Land Co., 80 N. J. Law, 369, 374, 79 A. 361, 34 L. R. A. (N. S.) 693.

The same may be said of the issue of ratification. While the evidence on this issue was meager, there was enough to require submission. Cabanne paid the plaintiff one month's fees and expenses under the contract by 'check drawn on trust funds and formally signed and countersigned by duly appointed trust officers, preceded by an official audit and followed by a report made to the trustees by certified accountants. Cabanne admitted indebtedness for the next month's fees. The plaintiff's services were proved to have been known to about everyone officially connected with the business except the two absent trustees. Whether from this record of the plaintiff's connection with the trust and part payment for his services the absent trustees knew and ratified the action of the active trustee was a question for the jury. Cases cited supra.

At the argument in this court a question arose as to the plaintiff's right to sue and recover from the trustees, jointly or severally, either on their trust or personal liability. As this question was not presented to nor passed upon by the trial court, it is not properly here for review.

· [3] The only remaining question which calls for discussion is the refusal by the trial court to allow the plaintiff to read to the jury portions of the deposition of a witness which had been taken on behalf of the ' defendants and the ruling of the trial court that the plaintiff, if he wished to avail himself of the deposition so taken, must read all of it or none of it. The plaintiff read the whole deposition. This ruling, though error, was harmless because the case did not go to the jury and therefore the plaintiff was not bound by those portions of the deposition which were hurtful to his case—unless, indeed, the learned trial court in reviewing the evidence on the motion for a directed verdict so regarded them. The witness was Priest, one of the defendants. He denied all knowledge of the contract with the plaintiff,

denied that he authorized its execution, and denied ratification. Of course, when the plaintiff read this deposition he made the defendants' witness his own witness, and by his deposition he was bound. Much of it was fatal to him. Just why the plaintiff desired to read this adverse testimony in order to obtain what he regarded as favorable testimony appearing here and there in the deposition we cannot imagine, for we find nothing in it that was helpful to him. Be that as it may, on re-trial the question will arise whether the plaintiff may use a deposition taken by his adversary and introduce only such parts of it as he may desire, leaving to the defendants, on whose behalf the deposition was taken, the right to put the remainder in evidence.

This is not an instance where a party for whom a deposition has been taken seeks to introduce only a part of it, but it is an instance where one seeks to avail himself of the statements of a witness whose deposition has been taken by his adversary without making that witness his own and, therefore, without being bound by all that he said but only by the part that is read. We are in accord with the law in this regard pronounced by the Circuit Court of Appeals for the Eighth Circuit in Crotty v. Chicago G. W. R. Co., 169 F. 593, 595, 596, 95 C. C. A. 91, 93. The court, speaking by Judge Van Devanter, said:

"In the course of the trial, the defendant was permitted to read in evidence a portion of each of four depositions taken by the plaintiff, but not used by her, the plaintiff objecting in each instance that it was not admissible to read a part only of a deposition, and that the portion read did not include all bearing upon the same subject. * * * There is some diversity of opinion among the courts upon this question of practice, but the prevailing and better opinion is that there is no sound objection to the reading of a part only of a deposition, if what is read does not consist of mere fragmentary excerpts, a correct appreciation of which depends upon the context, and the opposite party be left at liberty to read what is omitted. Scherer v. Everest (C. C. A.) 168 Fed. 822; Watson v. St. Paul City Ry. Co., 76 Minn. 358, 363, 79 N. W. 308; Morrison v. Wisconsin, etc., Co., 59 Wis. 162, 171, 18 N. W. 13; Miles v. Stevens, 3 Pa. 21, 41, 45 Am. Dec. 621; Herring v. Skaggs, 73 Ala. 446, 453; Norris v. Brunswick, 73 Mo. 256; 4 Wigmore, Ev. § 2103." Bernhardt v. City & S. R. Co., 49 App. D. C. 265, 263 F. 1009, 1011; 18 C. J. 736.

The judgment below is reversed with the direction that the plaintiff be awarded a new trial.